FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ APR 02 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------- X

QUANTALIS LEGRAND,

Plaintiff,

-against-

DET. JASON LEVY, Shield # 6945; DET. JOSEPH RYAN, Shield # 6479; and DET. PATRICK BRADY, the individual defendants sued individually and in their official capacities,

Defendants.

---------------------------------------- X

**COMPLAINT**

CV 10 - 1486

ECF Case

Jury Trial Demanded

DEARIE, CH. J

POLLAK. M.J

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which plaintiff seeks relief for the violation of plaintiff's rights secured by 42 U.S.C. §§ 1983, 1985(3), and 1988; and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The claims arise from an incident(s), which occurred on or about April 4, 2007. During the incident(s) members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, false arrest, malicious prosecution, excessive force, unlawful strip search, unlawful search and seizure, retaliation for free speech, conspiracy, unconstitutional conditions of confinement. Plaintiff seeks compensatory and punitive damages, declaratory

relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1988; and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper here pursuant to 28 U.S.C. § 1391 because the acts in question occurred in Kings County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5. Plaintiff Quantalis Legrand is a resident of the State of New York, Kings County.

6. Defendant Jason Levy is a New York City Police Officer, assigned Shield # 6945, employed with "BSND" and/or the 61st Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

7. Defendant Joseph Ryan is a New York City Police Officer, assigned Shield # 6479, employed with "BSND" and/or the 61st Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

8. Defendant Patrick Brady is a New York City Police Officer, employed with "BSND" and/or the 61st Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

9. The individual defendants are sued in their individual and official capacities.

**STATEMENT OF FACTS**

10. The following is a summary set forth for the purpose of demonstrating and providing notice of plaintiff's claims against the defendants. Plaintiff has not set forth each and every fact concerning the incident(s) described below.

11. On April 4, 2007, at approximately 6:00 a.m., at and in the vicinity of 3003 Avenue X, Apt. # 2C, Brooklyn, New York, and the 61st Precinct, several police officers operating from "BSND" and/or the 61st Precinct, including upon information and belief, defendants Det. Levy, Det. Ryan, and Det. Brady, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

12. On April 4, 2007, at approximately 6:00 a.m., defendants Det. Levy, Det. Ryan, and Det. Brady, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime, unlawfully entered 3003 Avenue X, Apt. # 2C, Brooklyn, New York.

13. While entering Apt. # 2C, police officers maliciously and unnecessarily broke down the door and entered the apartment.

14. Once defendants entered Apt. # 2C, plaintiff was not free to disregard the questions of the defendant police officers or walk way or leave the scene.

15. While inside Apt. # 2C, police officers without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff (or any third person) had committed a crime falsely arrested plaintiff.

16. At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, plaintiff did not commit a violation of law, regulation, or administrative code, either in or outside the individual defendant officers' presence.

17. At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, plaintiff did not commit any criminal act, either in or outside the individual defendant officers' presence.

18. At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, plaintiff did not act in manner that would give the individual defendant officers cause to stop, question, or arrest plaintiff.

19. At all times mentioned in the complaint, including prior to, during, and after incidents detailed herein, the individual defendants did not observe plaintiff engaged in suspicious, unlawful, or criminal conduct.

20. At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, the individual defendants did not observe plaintiff commit: any violation of law, regulation, or administrative code; commit any criminal act; or act in manner that justified stopping, questioning, or arresting plaintiff.

21. At all times mentioned in the complaint, including prior to, during, and after the incidents detailed herein, the individual defendants were not provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had engaged in suspicious, unlawful or criminal conduct.

22. After the police officer entered the apartment, Sgt. Anthony Samuel directed (in the presence of P.O. Albert Marvelli, and defendants Det. Levy, Det. Ryan, and Det. Brady) Det. Charles Derosalia, a male officer, to observe plaintiff change from her pajamas to her clothes. Sgt. Samuel's order was unlawful because when a female arrestee needs to be searched or to change her clothes, it is NYPD search and seizure policy for a female member of the NYPD to conduct such action, and it is an

invasion of bodily privacy when an officer views an arrestee's unclothed or partially unclothed body without consent or justification. In addition, the actions of P.O. Marvelli, and defendants Det. Levy, Det. Ryan, and Det. Brady were unlawful because they witnessed these acts, but failed to intervene and protect plaintiff from this conduct.[1]

23. Thereafter, Det. Derosalia watched plaintiff dress while they were alone inside her bedroom. Plaintiff was forced to take off her pajamas, and put on her bra and pants while the male officer watched, exposing her breasts and underwear to him.

24. Plaintiff protested this conduct, and asked for a female officer to observe her change clothes, but Det. Derosalia refused.

25. There was a female officer present in the apartment, but she was not directed to supervise plaintiff change clothes.

26. The fact that a male police officer observed plaintiff, a female arrestee, dress, is contrary to NYPD's policies and procedures concerning the search and seizure of arrestees.

---

[1] The City of New York, Commissioner Raymond W. Kelly, Police Officer Albert Marvelli, Sergeant Anthony Samuel and Detective Charles Derosalia are presently defendants in 09-cv-04338-ILG-MDG, which is a related case.

27. The police officers found no evidence of weapons, contraband, narcotics, or illegal activity on plaintiff's person.

28. Thereafter, plaintiff was taken from her bedroom, and police officers, committed excessive force against plaintiff by maliciously, gratuitously, and unnecessarily placing excessively tight handcuffs on plaintiff's wrists.

29. The police officers who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

30. The police officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was compliant to any commands, and did not resist arrest.

31. Plaintiff was physically injured as a result of the excessive use of force. Her injuries consisted of marks to her wrists, pain and suffering.

32. Furthermore, during their search of the apartment, police officers unreasonably, maliciously, and unnecessarily damaged plaintiff's furniture, fixtures and personal property, by ripping her photos, damaging her clothes, throwing her belongings about the floor, and defecating in her toilet without flushing.

33. Thereafter, Sgt. Samuel, P.O. Marvelli, Det. Derosalia, and defendants Det. Levy, Det. Ryan, and Det. Brady, transported plaintiff to the 61st Precinct. P.O. Marvelli was assigned as plaintiff's arresting officer responsible for plaintiff's arrest processing at the 61st Precinct.

34. At the 61st Precinct, plaintiff continued to complain about the police officers' conduct, and in retaliation Sgt. Samuel, P.O. Marvelli, Det. Derosalia, and defendants Det. Levy, Det. Ryan, and Det. Brady caused plaintiff to be illegally strip-searched without either a warrant, probable cause, or reasonable suspicion to justify the search. Indeed, plaintiff had only been arrested for a misdemeanor charge(s).

35. Indeed, the strip search was also improper because Det. Derosalia, the male officer who watched her change at the apartment conducted the strip search, which is against NYPD's policies and procedures concerning the search and seizure of arrestees, which requires the Precinct Desk Sergeant to be notified and a female member of the NYPD to do the search.

36. Specifically, Det. Derosalia came over to plaintiff and stated that he knew that plaintiff had no contraband on her but that he had to search her as a routine procedure. This event occurred in the presence of, at least, one of the other officers (i.e. Sgt. Samuel, P.O. Marvelli, Det. Levy, Det. Ryan, or Det. Brady). This was illegal because when

a female arrestee needs to be searched, it is NYPD search and seizure policy for a female member of the NYPD to conduct such action, and it is an invasion of bodily privacy when an officer views an arrestee's unclothed or partially unclothed body without consent or justification. In addition, the action of this defendant was unlawful because he witnessed this act, but failed to intervene and protect plaintiff from this conduct.

37. Thereafter, Det. Derosalia placed plaintiff inside a bathroom, away from the cell area, and once there he told her to lift up her shirt. Plaintiff protested and refused to lift up her shirt above her abdomen.

38. This was not enough for Det. Derosalia, and he said no all the way, and took hold of plaintiff and pulled up her shirt, exposing her breasts and bra.

39. Once Det. Derosalia let go of her, plaintiff pulled her shirt down. Then Det. Derosalia ordered her to take down her pants. Plaintiff protested and would only take down her pants part way.

40. Again this was not enough for Det. Derosalia, and he took hold of plaintiff and pulled down her pants exposing her underwear.

41. In *Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001), the Second Circuit held that the Fourth Amendment to the United States Constitution prohibits officials from performing strip

searches of pretrial detainees charged with misdemeanors or other lesser offenses unless there exists reasonable suspicion that the detainee is concealing a weapon or other contraband based on the crime charged, the particular characteristics of the arrestee, or the circumstances of the arrest.

42. Plaintiff was charged with a misdemeanor when she was strip searched at the 61st Precinct.

43. The NYPD has completely ignored the Second Circuit's mandate in *Shain* by continuing to enforce its unlawful strip search policy.

44. Plaintiff was subjected to NYPD's unlawful policy of strip-searching newly arrested individuals.

45. Moreover, plaintiff filed a complaint with the NYPD's Internal Affairs Bureau (Log # 08-03272) concerning this misconduct and was informed by the Internal Affair Bureau, in a letter dated April 28, 2009, that "there is sufficient evidence at this time to prove your allegation [of an improper search at the 61st Precinct;]" and "[a]dministative charges have been preferred through our Department Advocate's Office against the officer involved." *See* Exhibit 1 attached hereto.

46. Eventually, plaintiff was removed to Brooklyn Central Booking, where she was subjected to depraved, filthy, and inhumane conditions of confinement, including overcrowding.

47. The guards and personnel assigned to Central Booking looked the other way at these dangerous conditions, and ignored arrestees who sought their assistance.

48. While plaintiff was incarcerated at the 61st Precinct and Central Booking awaiting arraignment, police officers, pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed a crime; and based on the these false allegations the Kings County District Attorney's Office initiated a prosecution against plaintiff, under Docket Number 2007KN025263.

49. To cover up their misconduct, the police officers intentionally, knowingly and purposely provided false statements and information to cause plaintiff to be prosecuted.

50. The police officers initiated the above-stated malicious prosecution(s) against plaintiff.

51. The police officers lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

52. The police officers acted with malice to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

53. The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

54. The above-stated malicious prosecution terminated in plaintiff's favor when the case against plaintiff was dismissed in its entirety on or about October 1, 2007.

55. The aforesaid events are not an isolated incident. City of New York and Commissioner Raymond W. Kelly have been aware (from lawsuits, notices of claim and complaints filed with the Civilian Complaint Review Board) that many of the NYPD's officers are insufficiently trained on the proper way to use force, search an arrestee, and how to treat innocent and/or uninvolved individuals who are found in a location that is the subject an incident. Indeed, an Internal Affairs Bureau investigation resulted in Det. Derosalia being charged with improperly searching approximately 18 women in 2006 and 2007. Further, P.O. Marvelli and Det. Ryan are currently defendants in *Bova v. City of New York, et al.*, 09-cv-5436 (EDNY), concerning a July 2007 incident where a female arrestee was arrested by "BSND" and improperly searched by a male officer. In addition, Det. Levy, Det. Brady, and Det. Derosalia were defendants in *Boyd v. City of New York, et al.*, 08-cv-4457 (EDNY), which concerned a 2006 incident of police misconduct that settled for $50,000. P.O. Marvelli and Det. Levy were defendants in *Enterberg v. City of New York, et al.*, 09-cv-1467 (EDNY), which concerned a 2006 incident of police misconduct that settled for $50,000. P.O. Marvelli was also a defendant in *Cassidy v. City*

*of New York, et al.*, 08-cv-3812 (EDNY), which concerned a 2007 incident of police misconduct that settled for $60,000. Furthermore, P.O. Marvelli was a defendant in *Singleton, et al v. City of New York, et al.*, 06-cv-5639 (SDNY), which concerned an incident of police misconduct that settled for $20,000 plus attorney's fees. Finally, Sgt. Samuel was a defendant in *Jackson, et al v. City of New York, et al.*, 03-cv-4870 (EDNY), which concerned an incident of police misconduct that settled for $60,000.

56. The City of New York and Commissioner Raymond W. Kelly are further aware that such improper training has often resulted in a deprivation of civil rights. Despite such notice, they have failed to take corrective action. This failure caused the officers in the present case to violate the plaintiff's civil rights.

57. Moreover, the City of New York and Commissioner Raymond W. Kelly were aware prior to the incident that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers. Despite such notice, City of New York and Commissioner Raymond W. Kelly have retained these officers, and failed to adequately train and supervise them.

58. The individual defendant(s) acted in concert committing the above-described illegal acts toward plaintiff.

59. As a result of defendants' actions plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

**FEDERAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS**

60. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

61. The conduct of defendant officers, as described herein, amounted to false arrest, malicious prosecution, excessive force, unlawful strip search, unlawful search and seizure, retaliation for free speech, conspiracy, unconstitutional conditions of confinement.

62. The conduct of the defendant officers, as described herein, violated plaintiff' rights under 42 U.S.C. §§ 1983, 1985(3) and 1988; and the First, Fourth, Fifth, Sixth, by committing false arrest, malicious prosecution, excessive force, unlawful strip search, unlawful search and seizure, retaliation for free speech, conspiracy, unconstitutional conditions of confinement.

63. Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment. Said acts by said

defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights secured by 42 U.S.C. §§ 1983, 1985(3), and 1988; and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

64. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

65. The plaintiff is also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiff' rights.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and attorney's fees; and

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED: New York, New York
April 2, 2010

MICHAEL HUESTON, ESQ.
*Attorney for Plaintiff*
350 Fifth Avenue, Suite 4810
New York, New York 10118
(212) 643-2900
mhueston@nyc.rr.com

By:

MICHAEL O. HUESTON

# Exhibit 1



POLICE DEPARTMENT

Internal Affairs Bureau
315 Hudson Street, 3rd floor
New York, New York 10013

April 28, 2009

Quantalis Legrand
3003 Avenue X
Brooklyn, N.Y. 11235

Ms. Legrand: **re: log #08-03272**

The incident in which you were improperly searched by a member of the New York City Police Department subsequent to your arrest on April 4, 2007 was investigated by the Internal Affairs Bureau. The Bureau has determined that there is sufficient evidence at this time to prove your allegation. Administrative charges have been preferred through our Department Advocate's Office against the officer involved. The status of those charges is currently pending.

Complete and thorough investigations of complaints such as yours assist the New York City Police Department in maintaining the highest standards of integrity. It is important that complaints coming within the jurisdiction of this Department be called to our attention so that appropriate action can be taken.

Sincerely,

Derrick Corrado
Captain
Commanding Officer
Internal Affairs Group 41
Bronx/Manhattan Area